IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004 at Knoxville

## STATE OF TENNESSEE v. MICHAEL ANTONIO JONES

**Appeal from the Circuit Court for Marshall County**
**No. 15729     Charles Lee, Judge**

_____

**No. M2004-00456-CCA-R3-CD - Filed March 8, 2005**

_____

Convicted of aggravated robbery and sentenced as a career offender to a prison term of 30 years, the defendant, Michael Antonio Jones, appeals and challenges both the sufficiency of the convicting evidence and the propriety of the sentence. Discerning no error, we affirm the Marshall County Circuit Court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna Leigh Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant Public Defender (at trial), for the Appellant, Michael Antonio Jones.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The victim, Deborah Gold, testified at trial that she was robbed on the evening of July 12, 2003, while using a public telephone outside a store in the Belfast community. She testified that she went to the Belfast Market shortly after 10:00 p.m. to use the pay telephone to call her friend, Isaac Markham. The store was closed at that time of evening, and she saw no one in the parking area. She pulled her car up to the telephone box and dialed Mr. Markham's number without leaving her car. As she was about to complete her call, the hand of a black man grabbed the receiver away from her abruptly and replaced it on the hook. The victim was unable to see the man's face. The man instructed her to surrender her wallet or purse, and he placed a "hard" object covered with a rag to the victim's temple. She believed the object was a gun and testified that the man threatened to "blow [her] head off." She testified that she was terrified and afraid for her life. She dumped the

contents of her purse into the passenger seat; she did not want to lose all of the contents of her purse to the robber and wanted him to see that her money – about seven dollars – was in a smaller change purse, which she gave to the man.

The victim never saw the robber's face, but she testified at trial that, at the preliminary hearing, she had identified the defendant as the robber after hearing the sound of his voice. She testified that the robber wore a dark tee shirt with white lettering on the left side of the front, and she testified that a shirt shown to her in court was similar to that worn by the robber.

Isaac Markham testified that he received a call from the victim on the evening of July 12, 2003, and that the call ended abruptly. An acquaintance of the defendant, Henry Paul Cozart, testified that he formerly knew the defendant as "Face." After Mr. Cozart heard about the robbery via his radio, he discussed the event with the defendant, who admitted that he had committed the robbery. The defendant told Mr. Cozart that the robbery had only netted six or seven dollars, an insufficient amount to buy even a "rock" of cocaine. Mr. Cozart testified that, while discussing the incident with Kenneth Chilton and the defendant, Mr. Chilton stated that the defendant had used a television converter to simulate a pistol. Mr. Cozart testified that he saw the converter to which Mr. Chilton had referred and that one end of the converter resembled a .22 pistol barrel.

Detectives of the Marshall County Sheriff's Office testified that when the defendant was arrested, he was wearing the tee shirt that had been shown to the victim during her trial testimony.

Katie Rosario, the defendant's girlfriend as of July 12, 2003, testified that shortly after 10:00 p.m. on that date, the defendant and Kenneth Chilton asked her to drive them into Belfast to buy some beer, but during the trip, Chilton took over the driving duties. When the trio arrived in the business area of the community, Chilton parked the vehicle across the road from the Belfast Market, and the defendant left the vehicle and walked away. He soon returned, and Chilton asked him whether he "did any good." Rosario testified that, after the trio returned home, the defendant told her that he had "robbed a girl at the pay phone" but had received only eight dollars.

The defendant neither testified nor called any witnesses in his behalf. The jury convicted him of aggravated robbery, a Class B felony, and the trial court sentenced him to serve a 30-year, career-offender sentence in the Department of Correction.

In his first issue, the defendant claims that the evidence is insufficient to support the conviction. Specifically, he argues that the victim's erroneous belief that the defendant possessed a gun during the robbery was unreasonable.

When reviewing the sufficiency of the convicting evidence, this court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn therefrom are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,

2789 (1979); *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). In other words, this court will not re-evaluate or re-weigh the evidence. We presume that the jury has resolved all conflicts in the testimony and has drawn all reasonable inferences from the evidence in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof challenging the sufficiency of the evidence on appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

As is pertinent to the present case, aggravated robbery is "the intentional or knowing theft of property from the person of another by . . . putting the person in fear," Tenn. Code Ann. § 39-13-401(a) (2003), "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to *reasonably* believe it to be a deadly weapon," *id.* § 39-13-402(a)(1) (emphasis added).

The evidence showed that after jerking the telephone receiver from the victim's hand, the defendant demanded the victim's money. He placed a hard object covered by a rag against the victim's temple. Significantly, he threatened to "blow [her] head off." The victim testified that she was terrified and afraid for her life.

The record amply supports conclusions not only that the victim's fear was genuine, but also that it was engendered by a reasonable belief that the defendant held a firearm to her head. The defendant's actions, accompanied by his verbal threat, were calculated to convince the victim that the defendant held a gun, and it was reasonable for the victim to so believe. *See State v. Corwin Fitchpatrick*, No.W2003-01799-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, June 8, 2004) (under circumstances of case, pointing a wiffle bat at victim, combined with threat to shoot her, engendered reasonable belief that assailant possessed a deadly weapon); *State v. Levar Gray*, No. W2002-02259-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, Jan. 21, 2004) (using cell phone to simulate a gun and threatening to shoot victim justified reasonable belief that defendant possessed a deadly weapon); *State v. Daryl Anthony Jemison*, No. 01C01-9303-CR-00107, slip op. at 5 (Tenn. Crim. App., Nashville, Mar. 31, 1994) (although defendant did not actually possess a weapon, "the jury was entitled to accredit the [defendant's] threat and to infer from it and his hand positioning that he was armed").

We are not persuaded to a contrary conclusion by the defendant's argument that his ploy of covering the ersatz weapon with a rag should have signified to the victim that the object was not a gun at all. To the contrary, the defendant's actions were calculated to convince the victim that he held a gun; he chose a "hard" object, the "business end" of which closely resembled the barrel of a .22 pistol. With such a convincing "barrel" pressed against her head, a quaking victim is in no position to calculate the probability that the use of the rag covering was anything but a sophomoric ruse, and given the jury's accrediting the victim's testimony and that the facts supported a reasonable belief that the defendant possessed a deadly weapon, we are in no position to say that her belief was unreasonable.

In his second issue, the defendant complains that his 30-year sentence as a career offender is "excessive and violates Tennessee's constitutional prohibition against cruel and unusual punishment." *See* Tenn. Const. art. I, § 16 ("That . . . cruel and unusual punishments [shall not be] inflicted."). He argues that his 30-year sentence is excessive and disproportionate in view of the offense and his "minimal criminal record" in the 11 years preceding his aggravated robbery of the victim.[1]

A sentencing court is statutorily authorized to sentence as a career offender a defendant whose present offense is a Class A, B, or C offense and who has garnered at least six prior felony convictions of Class C or greater. Tenn. Code Ann. § 40-35-108(a)(1) (2003). A career offender "shall receive the maximum sentence within the applicable Range III," *id*. § 40-35-108(c), which for a Class B felony is 30 years, *id*. § 40-35-111(b)(2). The prescribed release eligibility is 60 percent of the imposed sentence. *Id*. § 40-35-501(f).

The defendant takes no issue with the trial court's finding that he met the statutory standard for a career offender, and the record supports this finding. The career offender status was imposed based upon the defendant's six felony convictions of selling cocaine that were imposed in 1992. In addition, he was convicted of burglary of an automobile in 1986 and felony malicious mischief in 1987. Also, he received convictions of simple possession of marijuana and obtaining property by false pretenses in 1986 and of gambling in 1987. He acquired an extensive record of misdemeanor convictions beginning in 1991: reckless driving (1991); public intoxication and resisting arrest (1992); driving on a revoked license and violating an order of protection (1998); reckless endangerment (2001); theft, criminal impersonation, resisting arrest, and vandalism (2002); and public intoxication (2003).

In determining whether a punishment is cruel and unusual pursuant to the state constitution, a court should consider whether (1) the punishment conforms to contemporary standards of decency, (2) it is grossly disproportionate to the offense, and (3) it exceeds the punishment necessary to achieve a legitimate penological objective. *State v. Black*, 815 S.W.2d 166, 189 (Tenn. 1991).

Applying the principles of *Black* to the present case, we note first that "[t]he power to define what shall constitute a criminal offense and to assess punishment for a particular crime is vested in the legislature." *State v. Burdin*, 924 S.W.2d 82, 87 (Tenn. 1996); *see also State v. Hale*, 840 S.W.2d 307, 314 (Tenn. 1992); *see* Tenn. Code Ann. § 40-35-102(3)(B) (2003) (legislature lists as an objective of punishment the restraint of "defendants with a lengthy history of criminal conduct"). That said, the statutorily mandated sentence of 30 years equates to the maximum sentence for a Range III, persistent offender. *See* Tenn. Code Ann. § 40-35-112(c)(2) (2003). Thus, in a

---

[1]Additionally, he claims that the Code's authorizing a prosecutor to seek punishment of an eligible defendant as a career offender impermissibly empowers the prosecutor, not the trial court, to determine whether the most severe sentencing status will be imposed. This claim is unsupported by citation to authority and is, therefore, waived. R. Tenn. Ct. Crim. App. 10(b).

proper case, a trial court could impose a 30-year sentence in Range III based upon only three prior Class B felony convictions.[2]  These considerations lead us to the conclusion that the defendant's 30-year sentence as a career offender conforms to contemporary standards of decency.

The defendant asks us to focus upon minimal aspects of the conviction offense – that the record does not establish that the defendant actually possessed a firearm during the robbery of the victim and that the proceeds of the robbery were only about seven dollars.  However, these are not the features of an aggravated robbery case upon which the legislature has focused.  A robbery becomes aggravated when the offender merely displays an article used or fashioned to lead a victim to reasonably believe that he possesses a deadly weapon, as well as when the offender actually possesses a deadly weapon. *See id*. § 39-13-402(a)(1).  Moreover, robbery is not graded according to the value of the property stolen. *Cf. id.* § 39-14-105 (grading *theft* according to the value of the property stolen).  Rather, aggravated robbery is codified as an offense against the person. *See generally id.* §§ 39-13-401 through 404; *see also  Gray v. State*, 538 S.W.2d 391, 393-94 (Tenn. 1976) (describing armed robbery as "inherently dangerous"); *State v. Takeita M. Locke*, No. E2000-00923-CCA-R3-CD (Tenn. Crim. App., Knoxville, June 25, 2001) (same), *aff'd in part and reversed in part*, 90 S.W.3d 663 (Tenn. 2002). We are unpersuaded that the mode of committing the aggravated robbery and the meager proceeds realized therefrom are sufficient bases for exempting the case from the prescribed sentencing regimen.  In other words, we disagree that the punishment is disproportionate to the offense.

Turning to the question whether the punishment comports with legitimate penological objectives, we recognize that recidivism is "a traditional, if not the most traditional basis for a sentencing court's increasing an offender's sentence." *See Almendarez-Torres v. United States*, 523 U.S. 224, 243-44, 118 S. Ct. 1219, 1230-31 (1998); *State v. Jeffery L.  Anderson*, No. 87-256-III (Tenn. Crim. App., Nashville,  June 2, 1988) (Daughtry, J., dissenting) ("Preventing recidivism is an appropriate sentencing goal in all criminal cases.").  By requiring extensive sentences for those offenders who have amassed lengthy criminal records, the legislature aims to punish recidivists – those who have remained recalcitrant despite the state's prior efforts at rehabilitation or correction.  Common sense informs us that such is a reasonable, perhaps necessary penological objective, and the defendant has not convinced us that the mandatory sentences for career offenders exceed the punishment necessary to achieve this objective.

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2] We recognize that Range III for persistent offenders entails a 35 percent release eligibility. *See* Tenn. Code Ann. § 40-35-501(e) (2003).  Moreover, we do not intend to imply that all of the defendant's prior convictions were for Class B offenses.